NEWTON R. SQUIER, administrator &c.,

*v.*

CAROLINE M. SHEPARD et al.

1. A purchase-money mortgage on a tract of several acres of land contained a provision that if the purchaser should, at any time before the mortgage fell due, sell any portion of the premises, the holder of the mortgage should release from the lien of the mortgage a proportionate part thereof on receiving an equivalent proportion of the amount then due; and, further, that if any

Squier *v.* Shepard.

portion of said premises should be sold during that time, the mortgage should be apportioned according to the number of acres sold.

2. The purchaser sold all the premises to one buyer, Wiswall, who subsesequently sold two lots of one and a half acres each to two different persons, and the mortgage was released as to those tracts on their each paying $1,413.—*Held*, that the apportionment clause was personal to the first purchaser (the mortgagor) only, and that Wiswall's grantees of the unreleased part were not entitled to the benefit thereof on the foreclosure of the mortgage.

Bill to foreclose. On final hearing on pleadings and proofs.

*Mr. E. B. Williamson,* for complainant.

*Mr. J. Henry Stone,* and *Mr. H. S. Glover* (of New York), for S. H. Weston.

*Mr. C. W. Berdan,* and *Mr. J. O'Connor, Jr.* (of New York), for W. S. Gurnee.

*Messrs. C. F. & C. E. Hill,* for Alex. and Geo. S. Studwell.

THE CHANCELLOR.

The bill is filed to foreclose a mortgage given January 21st, 1870, by Samuel G. Acton and wife to John Hoey, on seventeen acres of land in Long Branch, for $16,000 and interest, and assigned by the mortgagee, February 7th, 1870, to Bela S. Squier, the complainant's intestate. The mortgage was given for purchase-money of the mortgaged premises on the sale thereof by Hoey to Acton. Acton conveyed the property June 2d, 1870, to Mrs. Jane T. C. Wiswall, subject to the mortgage, the payment of which she assumed. On July 21st, 1870, Mrs. Wiswall conveyed part of the property, two lots of one and a half acres each, to Robert S. Howland and Sullivan H. Weston, respectively. Those lots were conveyed subject to the Squier {the complainant's) mortgage to the extent of $942 per acre, and they were subsequently, April 16th 1874, released from that mortgage. The consideration of each of those releases is stated therein to be $1,500. The complainant says that there was re-

ceived, on account of principal of the mortgage from Messrs. Howland and Weston, on the date of the releases, the sum of $2,826. The consideration of each of them therefore probably was $1,413. On July 21st, 1870, on the same date on which the conveyances to Howland and Weston were given, Mrs. Wiswall conveyed to Mrs. Caroline M. Shepard another part of the property intended to include ten acres by actual measurement, and December 21st, 1870, she conveyed to her another part, the residue of the property, said in the deed to contain four acres, more or less. Each of these conveyances was made subject to the Squier mortgage, which was thereby declared to be a lien thereon to the extent of $942 per acre, which amount, with interest from that date, the grantee thereby assumed to pay as so much of the purchase-money. To secure part of the purchase-money of the ten-acre tract, Mrs. Shepard gave to Mrs. Wiswall a mortgage for $6,000 and interest, and to secure part of the purchase money of the other tract, she gave to Mr. Wiswall (husband of the grantor) a mortgage for $2,500 and interest. Walter S. Gurnee is now the holder of the $6,000 mortgage, and Alexander Studwell of the other. Mrs. Shepard has, by various conveyances, disposed of the whole of the property conveyed to her. Among those conveyances were one made May 14th, 1873, by which she conveyed a lot to George S. Studwell, and another, made May 2d, 1877, by which she conveyed another lot to Weston. The greater part of the property has been released from the lien of the complainant's mortgage. The defendants Weston, Alexander Studwell, George S. Studwell and Walter S. Gurnee, have answered.

Weston and George S. Studwell insist that, in view of the terms of the complainant's mortgage, they are respectively entitled to redeem on paying such a proportion of the money due on the mortgage as their respective parts of the unreleased property bear to the whole of it. Alexander Studwell insists that those parts of the mortgaged premises which were conveyed after the giving of his mortgage, and are unreleased, should be first sold to pay the complainant's mortgage, and he and George S. Studwell claim that the complainant should be charged on

his mortgage, not only with the amounts actually received for releases, but the full value of the released properties, which they say was greater than the amounts which were the consideration of the releases. Gurnee claims that the property mortgaged to him is not burdened by the complainant's mortgage beyond the proportion which it bears to the whole of the property. This claim is based on a provision in the complainant's mortgage. The complainant, on the other hand, denies these claims and contends that the unreleased property should be sold, in the inverse order of alienation, to pay the money due on the mortgage after crediting the amounts actually received.

The rights of the answering defendants depend, to a great extent, upon the construction which is to be put upon the provision before referred to, contained in the complainant's mortgage. It is as follows:

"It being hereby provided that in case the said Samuel G. Acton, at any time before the expiration of three years from the date hereof, shall sell any portion of said premises above described, the holder and owner of this mortgage shall release such portion of land so sold from the lien of this mortgage, on payment of a sum bearing the same proportion to the amount of principal unpaid on this mortgage at the time the release is required as the value of the land so sold, or proposed to be sold, shall bear to the whole of the mortgaged premises. And it is further agreed that if any portions of the said land shall, at any time prior to the expiration of three years from the date hereof, be sold, the said mortgage shall be apportioned according to the number of acres which may be sold, but in no event shall the time for payment of said principal, or any part thereof, be extended beyond three years from the date hereof. It being also understood that the interest upon the whole sum remaining secured hereby and unpaid shall be fully paid up to the time of executing such release or releases, and that the expense of preparing, executing, acknowledging and stamping such instruments shall be paid by the mortgagor or his legal representatives, and that the written consent to such release of any subsequent encumbrancers or grantees, whose rights might be thereby affected, shall be first had and obtained by the party applying for such release."

As before stated, the mortgage was dated January 21st, 1870. It was payable in three years from its date. The provision above quoted for the apportionment of the mortgage on sale of any part of the property before the end of the three years, is a different one from the agreement to release, which precedes it.

The one is for the absolute discharge of the lien of the mortgage ; the other merely for its apportionment upon parts of the premises as they might be sold.   The counsel of the answering defendants insist that the effect of this latter provision was the same on a sale of part of the property by the mortgagor or his grantees within the three years, as if there had been a release by the mortgagee and a new mortgage taken by him on the property sold for the same proportion of the mortgage debt which the contents of the property sold bore to the contents of the whole property ; and that the grantees of the mortgagor and their assigns are entitled to the benefit of the agreement, so that on any sale by him of part of the property within the time limited, the three years, the purchaser took the property charged only with its due proportion of the amount of the mortgage debt and interest, and they claim that therefore the present owners of it are now entitled to redeem from the mortgage, on payment of such proportion.   All the property was sold in one parcel by Acton, the mortgagor, within the three years.   He sold to Mrs. Wiswall.   The grantees of the latter are not entitled to the privilege of apportionment under the agreement contained in the mortgage.   The stipulation was in favor of Acton, and not of his grantees.   The mortgagee manifestly did not intend to bind himself to the apportionment of the mortgage on the sale of the property without regard to the size of the parcels in which it might be sold, for it is to be observed that the stipulation is for an apportionment according to the number of acres in the part sold.   This is evidence that the mortgagee had in view the sale of the property in large parcels.   But his agreement was, as before remarked, with the mortgagor alone and not with his assigns.   The stipulation contemplates the making of an apportionment by the mortgagee.   It does not appear that he was ever requested to make or agree to any.   None was ever made, and the answering defendants are not entitled to have it made now.   Nor is there any proof that when they released parts of the property the complainant or his intestate had any actual notice of the rights of any owner of any part of the property or of any mortgagee thereof.   And without such actual

notice they were at liberty to release as they saw fit.   *Blair* v. *Ward, 2 Stock. 119.*   There appears to me to be nothing to justify a departure from the settled rule which directs the sale of the parcels of the mortgaged premises to pay the mortgage in the inverse order of alienation.   There will be a decree accordingly.